IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KERRIE MILLIGAN-GRIMSTAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:13-cv-08913 |
| ) | |
| MORGAN STANLEY, et. al., ) | Honorable Thomas M. Durkin |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Steven M. Malina
Jonathan H. Claydon,
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601

Tracy L. Gerber, FBN 21245
GREENBERG TRAURIG, LLP
777 South Flagler Drive, Suite 300 East
West Palm Beach, Florida 3340

***Attorneys for Defendants***

Plaintiff's Memorandum in Response to Defendants' Motion for Summary Judgment (Dkt. No. 50, the "Response") is devoid of any analysis addressing the authority and argument Defendants presented that makes clear Plaintiff cannot make out a *prima facie* case of discrimination. Instead, tacitly conceding that she cannot make the required showing under *McDonnell-Douglas*, Plaintiff attempts to establish a "mosaic" of circumstantial evidence from which this Court could infer discrimination on part of the Defendants so as to state a direct evidence case. The glaring flaw in this tactic is that Plaintiff does not have evidence to support this argument. Plaintiff has only her (or her attorney's) concocted theory that there was a gender-fueled conspiracy to oust Plaintiff from her position. There is no foundation for this assertion.

In the absence of record evidence supporting her position, Plaintiff resorts to muddying and stretching the record in an effort to manufacture an issue of material fact to escape summary judgment. This attempt is unavailing. As set forth in detail in Defendants' contemporaneously-filed motion to strike, her improper and evasive non-responses to Defendants Statement of Undisputed Material Facts ("Defendants' SOF") do not comply with Local Rule 56.1. That point aside, Plaintiff cannot escape her express testimonial admissions that doom her claim. Plaintiff explicitly admitted to the following:

- In June 2008, MSSB suspended Grimstad for one week and required that she complete remedial compliance training because she violated MSSB policy by signing an 87 year old client's name to a letter of authorization ("LOA"), and Grimstad executed a memorandum acknowledging her violation of MSSB policy in connection with signing the client's name to an LOA. (Grimstad Tr. at pp. 68:6-21; 69:1-18);
- In June 2009, MSSB issued Grimstad a Letter of Education after she violated Firm policy by supplementing information on a blank form that a client had previously signed, and Grimstad executed a written memorandum acknowledging the Letter of Education. (Grimstad Tr. at p. 88:12-18);
- Grimstad processed a wire transfer request set forth in an email that appeared to be from a client [MJS's] husband after receiving verbal confirmation from an individual purporting to be MJS's husband. (Grimstad Tr. at pp. 112:7-9; 124:4-25; 125:1-23);

1

- MJS's husband, however, did not have written authority to give instructions on the account, only MJS did. (Grimstad Tr. at pp. 110:10-17; 111:3-8; 121:15-21);

- MSSB policy requires verbal confirmation of a wire transfer from the client before processing the transfer. (Grimstad Tr. at pp. 120:7-18);

- Taking instruction from MJS's husband, absent written authorization from MJS, was not in accord with FINRA's rules. (Grimstad Tr. at p. 124:4-12); and

- Grimstad admits that the she did not speak to the client [MJS] before wiring funds out of the client's account. (Grimstad Tr. at pp. 116:11-21; 120:7-10).

Given these facts, it is not surprising that Plaintiff has elected to distort the record rather than confront her admissions. Plaintiff's evasive litigation tactics should not be countenanced. Under Local Rule 56.1 and a host of authority, Plaintiff's responses to Defendants' SOF are improper, and the facts should be deemed admitted for the purposes of this motion. Plaintiff has no evidence that she was meeting MSSB's legitimate performance expectations and no evidence that her supervisor's reason for firing her – her admitted violation of Firm Policy – was pretext for gender discrimination. Notwithstanding that fact, Plaintiff also has no evidence that MSSB treated proper male comparators better. Therefore, Plaintiff has failed to raise a genuine issue of material fact that precludes summary judgment in Defendants' favor on her discrimination claim.

Plaintiff's hostile work environment claim fares no better. The claim fails as a matter of law because the great majority of the allegedly harassing conduct occurred far outside the limitations period, and there is no basis to claim that the conduct was continuous under Seventh Circuit authority. That fact notwithstanding, the conduct alleged by Plaintiff does not rise to the level of severe or pervasive conduct that is actionable. This Court can rule that her claim fails as a matter of law for this reason as well.

**ARGUMENT**

I. **Plaintiff Has Not Shown By the Direct Method That Her Firing Was Discriminatory**

There are three ways to prove that a firing was the result of unlawful discrimination: (1) the direct method based on direct evidence; (2) the direct method based on circumstantial evidence; and (3) the indirect method. *See Terugi v. CIT Group/Capital Fin., Inc.*, 709 F.3d 654, 659 (7th Cir. 2013). Though her argument is not at all clear, Plaintiff appears to claim that she can establish that her termination was discriminatory using the direct method based on both direct evidence and circumstantial evidence. Plaintiff is wrong. She has not presented sufficient evidence – whether direct or circumstantial – to show that Evans's decision to fire her was discriminatory so as to demonstrate that a disputed issue of material fact exists.

A. **Plaintiff Mistakenly Claims to Have Direct Evidence of Discrimination**

In order to create a triable issue of fact, Plaintiff must "provide direct or circumstantial evidence that the *decisionmaker* has acted for a prohibited reason. A decisionmaker is the person 'responsible for the contested decision.'" *Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003) (emphasis in original) (overruled on other grounds by *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)). Direct evidence is rare and "essentially requires an admission by the decision-maker" of discrimination. *Buie v. Quad-Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). To qualify as direct evidence, the statements must be: (1) made by the decision-maker; (2) close in time to the decision; and (3) related to the adverse employment action. *See Egonman v. Cook Cty. Sherriff's Dept.*, 602 F.3d 845, 850 (7th Cir. 2010). Here, there is no direct evidence that the decision-maker responsible for firing Plaintiff acted for a prohibited reason.

Mark Evans is the Chicago Complex Manager for MSSB's Chicago Complex where Plaintiff worked while employed for MSSB. Evans was responsible for the decision to terminate Plaintiff's employment. (Def. SOF ¶¶39-40.) There is no evidence that Evans made any

3

statements, in writing or verbally, that constitute direct evidence of discrimination. Plaintiff conceded that no such evidence exists, as she testified that Evans never said anything offensive to her, never engaged in any harassing conduct (towards her or otherwise) and never treated her unfairly. (*See* Plaintiff's Response to Defendants' SOF at ¶45.) Lacking any statement made by the decision-maker that could possibly constitute direct evidence of discrimination, Plaintiff cannot support her claim via the direct method using direct evidence.

Plaintiff argues that statements made by her co-workers, who were not her superiors and who were not decision-makers, are direct evidence of prohibited conduct. (Resp. at p. 11) ("Mitchell's and Brendza's expressed biases against women is direct proof that Milligan-Grimstad was the victim of sex discrimination, if not as a "smoking gun," then at least under the "cat's paw" theory of liability.") Plaintiff misapprehends the definition of direct evidence. **Only** statements from the decision-maker qualify. Because neither co-worker was the decision-maker for Plaintiff's firing, their alleged statements of bias cannot be direct evidence. *See Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 433 (7th Cir. 2005) (director of purchasing's statement that plaintiff received lower salary because he was Brazilian was not direct evidence of discrimination when director was not decision-maker); *accord Davis v. Con-Way Transp. Central Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004) (manager's statement "find a way to get rid of [plaintiff]" did not show racial animus when manager was not decision-maker).

### B. Plaintiff's Newly-Concocted "Cat's Paw" Theory Is Also Unsupported.

"Although a plaintiff must generally provide evidence that the decisionmaker acted for a prohibited reason to establish a prima facie case of retaliation, courts have imputed the retaliatory intent of a subordinate to an employer in situations where the subordinate exerts significant influence over the employment decision." *Boston v. U.S. Steel Corp.*, No. 15-2795, 2016 WL 851552, at *8 (7th Cir. March 4, 2016) (citations omitted). "This theory of liability is

known as the 'cat's paw' doctrine." *Id.* The cat's paw theory of liability applies when "a biased subordinate who lacks decision-making power uses the formal decision-maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Woods v. City of Berwyn*, 803 F.3d 865, 869 (7th Cir. 2015). In *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011), the Supreme Court held that under the cat's paw theory, there must be "some direct relation between the injury asserted and the injurious conduct alleged" that is neither "too remote, purely contingent, or indirect." Plaintiff asserts that "Mitchell's and Brendza's expressed biases against women" support a cat's paw theory of liability. (Resp. at p. 11.) This argument is meritless.

Plaintiff argues that "Mitchell and Brendza proximately caused Milligan-Grimstad's termination" (Resp. at p. 11.) Plaintiff claims that: (1) "Mitchell and Brendza were in direct contact with Evans and Mooyoung for more than year concerning having Brendza join the [Mitchell/Milligan] partnership;" (2) "those communications included the one month period" between the August 2014 meeting between Evans and Grimstad and her firing; and (3) Evans "fired Milligan-Grimstad" within days of when she expressed that should would not permit Brendza to join the partnership." (*Id.*) But the evidence does not bear this out. The record evidence of testimony given by Evans – the decision-maker – is unequivocal that he did not have any discussions concerning the Brendzas with Mitchell before Plaintiff's firing. (Mitchell Dep. Tr. at p. 120:18-21.) Evans further testified that he did not have any involvement with Mitchell choosing to work with the Brendzas until after Plaintiff's firing and was not aware that there was a joint presentation made by Plaintiff, Mitchell and the Brendzas in September 2014, shortly before Plaintiff's firing. (*Id.* at pp. 118:23-119:2; 120:22-121:2.) Nor is there any evidence that Plaintiff ever told Evans she would not work with the Brendzas, as her testimony is that she told

5

that *only* to Mitchell and she never reported any alleged harassment by David Brendza (or anyone else). (Plaintiff Dep. Tr. at pp. 64:21-67:1; 198:9-15.)[1]

Therefore, the record reflects that Evans did not have "direct contact" with Mitchell or Brendza about Brendza joining the Mitchell/Milligan partnership, contrary to Plaintiff's unsupported assertions in the Response. Accordingly, there is no way that Evans's decision to terminate Plaintiff's employment could have been influenced by their bias so as to implicate the cat's paw doctrine. To frame it in terms of the causation analysis required by the decision in *Staub*, Mitchell's and Brendza's allegedly discriminatory bias was not the causal factor in Evans's decision to terminate Plaintiff's employment. Evans was not aware of the supposed bias in favor of the Brendzas replacing Plaintiff and, instead, made the decision to terminate based on his determination, after an investigation by MSSB's Special Investigation Unit, that Plaintiff violated Firm Policy by processing a wire transfer on the instruction of an unauthorized third party, which she did not verbally confirm with the client. (Def. SOF ¶¶39-44.)

The analysis in *Johnson v. Koppers, Inc.*, 726 F.3d 910 (7th Cir. 2013), confirms that Plaintiff cannot support a cat's paw theory of liability. In *Johnson*, the plaintiff's co-worker filed a false report claiming that Johnson had called him racial and gender-based slurs, and Johnson was suspended. *See id.* at 913. When Johnson later got into a physical altercation, the defendant terminated her employment. *See id.* at 913-14. Johnson claimed that her co-worker harbored discriminatory animus against and that the false report led to her firing. *See id.* at 914-15. The Seventh Circuit held that the cat's paw theory failed because Johnson could not show that her co-worker's allegedly false report was the "proximate cause" of her termination. *Id.* at 915. The

---

[1] This point is crucial. Even if there was evidence that Evans had "contact" with Mitchell or Brendza about the Brendzas joining the partnership (which there is not), there is still a gaping hole in Plaintiff's chain of circumstantial evidence. There is no evidence whatsoever in the record that Evans had any knowledge of Plaintiff's supposed refusal to work with the Brendzas. Absent any such knowledge on the part of Evans, it is only rank speculation that he fired Plaintiff in order to allow her to be replaced.

6

actual proximate cause of Johnson's firing was the altercation, which was confirmed by the employer's investigation. *See id.* The same result is warranted here. There is no evidence that any alleged bias played any part in Evans's decision to fire Plaintiff, let alone sufficient evidence to create an issue of fact that any such bias was the proximate cause of her firing.

      **C.    There is No "Convincing Mosaic" of Circumstantial Evidence That Would Permit an Inference of Intentional Discrimination**

In the absence of direct evidence, a plaintiff can prevail under the direct method by constructing a "convincing mosaic" of circumstantial evidence that allows a jury to infer intentional discrimination by the decision-maker. *Blasdel v. Nw. Univ.*, 787 F. Supp. 2d 759, 769 (N.D. Ill. April 14, 2011). Courts in the Seventh Circuit have recognized three types of circumstantial evidence: (1) suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Id.* (citations omitted). The circumstantial evidence "must point directly to a discriminatory reason for the employer's action ... and be directly related to the employment decision." *Dass v. Chicago Bd. Of Educ.*, 675 F.3d 1060, 1071 (7th Cir. 2012). Summary judgment is appropriate if the plaintiff cannot assemble from various scraps of circumstantial evidence enough to allow the court to conclude that it is more likely than not that discrimination lay behind the adverse action. *Morgan v. SVT, LLC*, 724 F.3d 990, 996 (7th Cir. 2013).

      Plaintiff's supposed circumstantial evidence is unclear, as she does not include citations in her argument and does not explain what evidence she views as direct or circumstantial. That said, it appears that the circumstantial evidence she points to is: (1) Mitchell's and Brendza's

alleged bias against women; (2) Evans's firing of Plaintiff "within days of when she expressed that she would not permit Brendza to join the partnership;" (3) similarly-situated male employees received better treatment; (4) MSSB's reasons for firing Plaintiff were "falsely stated;" and (5) Evans and Troy Mooyoung had different recollections of the decision to terminate Plaintiff. (Resp. at pp. 10-12.) Upon examination Plaintiff's circumstantial evidence is largely exaggerated or pulled from thin air and provides an insufficient basis for an inference of discrimination.

First, there is no support for the assertion that Mitchell's and Brendza's alleged bias had any impact on Evans' decision to fire Plaintiff, because there is no evidence that he was aware of any such bias or of any alleged plan to replace Plaintiff. (*See* §IB, *supra*.)[2]

Second, there is no evidence that Evans was aware of Plaintiff's refusal to work with the Brendzas, so that could not have played any part in his decision to terminate. (*See* §IB, *supra*.)[3]

Third, Plaintiff has no basis to claim that male comparators were treated more favorably. Plaintiff mistakenly conflates mere customer complaints with actual discipline levied by MSSB. The two are far different because, as every service professional knows, customers will complain and "not every complaint involves employee conduct that merits … discipline." *Cox v. Lowe's Home Centers, LLC*, No. 3:14-cv-00679, 2015 WL 7288689, at *6 (W.D.N.C. Nov. 17, 2015). None of the comparators that Plaintiff points to were similarly-situated to her at the time of her firing. Only financial advisors in the same office or region and who dealt with the same supervisor and who had similar ***disciplinary*** histories are properly considered as applicable

---

[2] Notably, Plaintiff's contemporaneous communications when the wire incident came to light cast doubt on the theory that she was the target of a conspiracy motivated by Mitchell's gender bias. Plaintiff requested that Mitchell be allowed to accompany her to the initial meeting in which she was questioned about the incident. (*See* MSSB_GRIM0004998, attached as Exhibit A.)

[3] Plaintiff has also intimated that there is something suspicious about the span of several weeks between Evans' August 14, 2012 meeting and the September 24, 2012 firing. This is nothing more than conjecture. Evans testified that the decision process involved reviewing relevant documents, as well as consulting with members of MSSB's legal and human resources departments, which necessarily took time. (Evans Dep. Tr. p. 124:3-15.)

comparators. *See, e.g., Kaniff v. Allstate Ins. Co.*, 121 F.3d 258, 264-65 (7th Cir. 1997) (holding that comparator was not similarly situated where she "was accused of only a single instance of misconduct" in contrast to the multiple instances of the plaintiff). Thus, any financial advisor who did not have multiple previous disciplinary events is not a similarly-situated person. Vipul Shah is not a proper comparator. As detailed in Defendants' motion to strike, Shah did not violate the Firm Policy against taking instructions from an unauthorized third party. Moreover, Shah did not have any disciplinary record until January 2014, when he received a regulatory letter of caution. (*See* MSSB__GRIM0005759, attached as Exhibit B.) Therefore, Shah and Plaintiff were not similarly-situated. *Gallegos v. Texas Dep't of Transp.*, No. SA-08-CV-435, 2009 WL 3064712, at *3 (W.D. Tex. Sept. 22, 2009) (holding that white employee with no prior record of disciplinary history was not similarly situated to Mexican-American employee who was terminated after "a series of disciplinary problems"). The only such person is Patrick Lauderdale, who was terminated for engaging in the same type of conduct as Plaintiff. (Def. SOF ¶¶52-53.)[4]

Fourth, Plaintiff's claim that MSSB's reasons for firing her were pretextual is baseless. "Showing that the proffered justifications were mistaken is not enough; to establish pretext a plaintiff must show that the employer is lying when it claims that the justifications were the real reasons for the adverse employment action." *Harper v. Fulton County, Ill.*, 748 F.3d 761, 768, n. 7 (7th Cir. 2014). Plaintiff's own testimony admits that she failed to follow Firm Policy. As set

---

[4] Plaintiff attempts to cast doubt as to whether MSSB actually terminated Lauderdale's employment. (Pl. SOF Resp. at ¶ 51; "MSSB has not produced any signed documents reflecting that it in fact terminated him.") This is false. MSSB produced Lauderdale's U5 form reflecting his termination and the grounds therefore, which is **electronically** signed and submitted to FINRA. (*See* MSSB_GRIM 0005943-5946, attached as Exhibit C.) Moreover, the full CRD for Lauderdale plainly reflects his firing by MSSB. (*See* MSSB__GRIM 0006207-6222, attached as Exhibit D.) This Court can take judicial notice of Lauderdale's termination as reflected in FINRA's records. *See Forgione v. Gaglio*, No. 13 Civ. 9061, 2015 WL 718270, at *17 (S.D.N.Y. Feb. 13, 2015) ("the court may take judicial notice of FINRA's registration requirements and the reports in which they are maintained").

forth in detail in Defendants' motion to strike and response to Plaintiff's statement of additional facts, her improper and evasive denials cannot change the fact that she admits the conduct for which she was fired. There is no evidence of pretext here, as Plaintiff cannot and does not cite to a single piece of credible evidence to establish that MSSB's reasons for firing her – her (third) violation of Firm policy – was a lie.[5]

Fifth, there is nothing suspicious about the supposedly conflicting testimony of Evans and Mooyoung concerning the decision to fire Plaintiff. To the extent any conflict exists, it is immaterial. Both Evans and Mooyoung were unequivocal that Evans was the ultimate decision-maker for firing decisions in the Chicago complex. (*See* Evans Dep. Tr. at p. 22:12-18; Mooyoung Dep. Tr. at p. 93:16-22.) Evans consulted with numerous points of contact in the Firm's legal and human resources departments concerning the decision. (*See* Response to Plaintiff's First Set of Interrogatories at pp. 3, attached as Exhibit E). Evans happens to recall Mooyoung weighing in in favor of firing Plaintiff, while Mooyoung does not believe he took a position. (*See* Evans Dep. Tr. at pp. 121:15-122:15; Mooyoung Dep. Tr. at pp. 93:20-94.1.) This small discrepancy does not give rise to an inference of intentional discrimination. *See Morgan*, 724 F.3d at 999 (finding that a "single, minor discrepancy" in the statement of someone who was not the firing decision-maker was "too tenuous a ground" to find an issue of fact); *Gildenstern v. Abbott Labs.*, No. 08 C 6857, 2009 WL 3671333, at *6 (N.D. Ill. Nov. 2, 1999) (finding that "inconsistent descriptions" of the "basis for termination" did not constitute a "significantly changed story" that would give rise to an inference of pretext).

---

[5] As set forth in Paragraphs 47-48 of Defendants' SOF, Plaintiff entered into an acceptance, waiver and consent ("AWC") with FINRA on November 28, 2014, in which she consented to the entry of a finding by FINRA that she effected trades in MJS's accounts on the instructions of MJS's husband without MJS's proper written authorization and without receiving prior approval to exercise discretion in the account. The AWC is part of Plaintiff's permanent FINRA record.

10

In sum, Plaintiff's effort to construct a convincing "mosaic" of circumstantial evidence of discrimination so as to demonstrate an issue of fact falls well short. The opinion in *Morgan*, which Plaintiff heavily relies on in the Response, is particularly instructive in this regard. In *Morgan*, the plaintiff – an African-American security guard – alleged that he was fired because he reported a white store manager for taking a page of the newspaper without paying. *See* 724 F.3d at 992. The plaintiff began receiving disciplinary notices from another manager shortly after reporting the white supervisor and was fired about three weeks after the incident. *See id.* at 998. The plaintiff relied heavily on this supposedly suspicious timing, the fact that the white manager received a lenient one-day suspension for the theft, and that the defendant's HR director gave different explanations of the grounds for the plaintiff's firing. *See id.* at 997-999. The Seventh Circuit, however, rejected the plaintiff's argument, finding that there were reasonable explanations for these issues and that even if the termination was solely relating to the incident with the white supervisor, "it [did] not follow that the termination was based on race" because there was no indication in the record that the decision-maker was unhappy with the plaintiff's handling of the incident because the subject of his report was a white man." *See id.* at 998.

The same conclusion is warranted here. There is no indication in the record that the decision-maker – Evans – was unhappy with Plaintiff's performance in complying (or failing to comply) with Firm policy because she was a woman. Instead, there are only Plaintiff's speculation, conjecture and assertions of immaterial purported factual disputes. This, however, is not sufficient to meet Plaintiff's burden in responding to Defendants' summary judgment motion. Speculation, conjecture and conclusory assertions are not circumstantial evidence and cannot create a disputed issue of material fact. *Good v. Univ. of Chicago Medical Ctr.*, 673 F.3d 670, 675-76 (7th Cir. 2012). Further, "it is simply not true … that if a litigant presents an

11

overload of irrelevant or nonprobative facts, somehow the irrelevancies will add up to relevant evidence of discriminatory intent. They do not; zero plus zero is zero." *Gorence v. Eagle Food Centers, Inc.*, 242 F.3d 759, 762-63 (7th Cir. 2001).

## II. Grimstad Does Not Rebut Defendants' Showing That She Cannot Establish Discrimination Through The Indirect Method

Plaintiff's Response effectively concedes that she cannot support her discrimination claim under the indirect *McDonnell-Douglas* method – she does not even bother trying to argue that she can. As such, Plaintiff has waived any argument that she can establish her claim through the indirect method. *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."). Even if not waived, Plaintiff cannot rebut Defendants' arguments in their opening brief. Plaintiff's claim fails under the indirect method for two independent reasons. First, the evidence is undisputed that Plaintiff violated Firm Policy and, therefore, cannot establish that she was meeting MSSB's legitimate performance expectations. (*See* Def. SOF ¶¶40-43.)[6] Second, Plaintiff has not presented evidence that any similarly-situated male employees were treated more favorably. As detailed above, Lauderdale did not receive preferential treatment; he was fired. Also as detailed above, Shah did not have a disciplinary record similar to Plaintiff and, consequently, cannot be similarly-situated as a matter of law. Further, it is undisputed that Shah followed Firm policy and attempted to obtain verbal authorization from the client, but was duped by an imposter. Plaintiff, in contrast, never attempted to obtain verbal authorization from her client; rather she accepted an instruction from an unauthorized third party lacking authority over the account. For these reasons, Plaintiff's discrimination claim fails as a matter of law.

---

[6] As set forth in Defendants' motion to strike, the evidence cannot be refuted that Plaintiff's conduct was in violation of Firm Policy and FINRA rules.

**III.     The Evidence Is Undisputed That Plaintiff Cannot Establish A Hostile Work Environment Claim**

Acts are part of the same actionable hostile work environment where they are connected in time or circumstances such that they reinforce each other or can be reasonably linked into single chain of conduct. *Lucas v. Chicago Transit Auth.,* 367 F.3d 714, 727 (7th Cir. 2004). Courts look to the similarity of between the acts, the persons involved and any gap in time between the alleged acts to determine which acts are part of the hostile work environment claim. *See id.* In the Response, Plaintiff cites nothing from the record to support her assertion that she endured "continuous" sexual harassment. This is not a surprise. The only timely acts of alleged harassment that Plaintiff can muster are Mitchell's alleged statement in the summer of 2012 that Plaintiff should plan her pregnancy to fit their work schedules and Mitchell's alleged comments about a CNBC host's revealing clothes beginning in 2011 and continuing into 2012. (SOF ¶57.) This conduct by Mitchell bears no relation to the earlier conduct alleged by Grimstad, in which co-workers made sexually-charged statements to her at firm events and parties between 2005 and 2009, and two other isolated incidents in which Plaintiff was allegedly berated for not handling her book of business. (*See id.*) The acts occurring before May 10, 2012 are discrete in time and circumstances from the two instances alleged to have occurred after that date and within the 300-day limitations period. Therefore, they cannot be considered part of the same actionable hostile work environment as a matter of law. *See Sanford v. Walgreen Co.*, No. 08-CV-6325, 2009 WL 3152795, at *5-6 (Sept. 23, 2009) (dismissing hostile work environment claim as untimely because alleged conduct "was not perpetrated by the same managers"); *accord Avdyli v. Barnhart*, No. 05-C-2132, 2007 WL 57601, at *10 (N.D. Ill. Jan. 3, 2007) (holding that conduct of different perpetrator not part of same hostile environment claim).

13

Additionally, Plaintiff musters only a meager argument to counter Defendants' showing that the allegedly harassing conduct at issue was not severe or pervasive. (Resp. at p. 15.) There are no cites to the record and no actual examples of actions that are intimidating or obscene directed towards the Plaintiff. Thus, Plaintiff effectively concedes that she cannot meet the standard for severe or pervasive conduct. In order to establish a hostile work environment claim, "the threshold for plaintiffs is high, as the workplace that is actionable is one that is hellish. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 645 (7th Cir. 2005). Here, Plaintiff testified that she "loved" her job and "experienced success" in her career at MSSB. (Grimstad Dep. Tr. pp. 65:22-66:11.) These are not the words of an individual stuck in a "hellish" environment.

The factual record does not support Plaintiff's conclusory and undeveloped argument. Plaintiff's complained-of conduct falls far below the types of conduct that the Seventh Circuit has found not to constitute an actionable hostile work environment. For example, Plaintiff cited *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir. 1995), where the plaintiff's supervisor called her a "pretty girl" and made grunting noises when she left his office, told her that his office did not get "hot" until she stepped into it, said that "all pretty girls should run around naked in the office" and made gestures suggesting masturbation to her during a conversation. The Seventh Circuit overturned a jury verdict for plaintiff and found that the complained-of conduct was not actionable sexual harassment. *See id.* at 430. In *E.E.O.C. v. Mgmt. Hospitality of Racine, Inc.*, 666 F.3d 422 (7th Cir. 2012), also cited by Plaintiff, the plaintiff was subjected to a supervisor who used obscene sexual language, propositioned her for three-way sex with his girlfriend, told her she was "kinky" and liked "rough" sex, and stared at the intimate parts of her body "like a piece of meat," engaged in physical touching by "slap groping" her buttocks, and plaintiff testified that she felt "bullied" by him and that his comments made her feel "dirty." *Id.*

14

at 432. In stark contrast here, Plaintiff complains of conduct that is – at worst – "tinged with sexual innuendo," but not worse than comments that the public knows to be "repeated on prime time television" that cannot be the basis for a hostile work environment claim as set forth in *Baskerville.* 450 F.3d at 430-31.

### IV. The Evidence Is Undisputed That MSSB Was Plaintiff's Employer

In a footnote on the cover page to Plaintiff's Response, she asserts that Morgan Stanley is not entitled to summary judgment because Plaintiff was employed by Morgan Stanley and was never told otherwise. This argument is specious. Only an individual's employer can be the subject of claims brought under Title VII. Here, there is no evidence whatsoever that Morgan Stanley, MSSB's parent, was Plaintiff's employer. Absent such evidence, there is no basis for parent company liability. *See, e.g., Julin v. Advanced Equities, Inc.*, No. 13 C 9075, 2014 WL 6883130, at *3 (N.D. Ill. Dec. 5, 2014) (holding that claims against corporate parent must be dismissed in the absence of factual allegations sufficient to pierce the corporate veil). Further, Plaintiff admitted that MSSB was her employer. (Plaintiff Dep. Tr. at p. 16:15-24.) Also, Defendant's Exhibit 32, which Plaintiff submitted, is Plaintiff's CRD report maintained by FINRA. The CRD identifies her employer from June 1, 2009 through September 24, 2012, as "Morgan Stanley Smith Barney." (Defendant's Exhibit 32 at p. 4, attached as Exhibit F.) This evidence, of which this Court can take judicial notice, undeniably establishes that MSSB was her employer, and that there is no credible basis to name Morgan Stanley as a defendant.[7] That fact aside, the pending motion for summary judgment is brought on behalf of both Defendants, and judgment should be entered in favor of both Defendants and against Plaintiff.

---

[7] This Court may also take judicial notice of records from the SEC, which establish that MSSB was created in 2009 as a joint venture between Morgan Stanley and Citigroup, whereby Morgan Stanley & Co. contributed its private wealth management businesses. (*See* Morgan Stanley May 29, 2009, Form 8-K.) (http://www.sec.gov/Archives/edgar/data/831001/000095010309001323/dp13642_8k.htm.)

**CONCLUSION**

For all of the foregoing reasons, as well as those set forth in Defendants' memorandum in support of summary judgment, Defendants' respectfully request that their motion be granted and summary judgment be entered in their favor on all of Plaintiff's claims.

Dated: March 11, 2016

/s/ *Jonathan H. Claydon*
Steven M. Malina
Jonathan H. Claydon,
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
PH: (312) 456-8400
malinas@gtlaw.com
claydonj@gtlaw.com

Tracy L. Gerber, FBN 21245
GREENBERG TRAURIG, LLP
777 South Flagler Drive, Suite 300 East
West Palm Beach, Florida 3340
E-Mail: *gerbert@gtlaw.com*

***Attorneys for Defendants***

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the a copy of the foregoing was served via the Court's CM/ECF System, this 11th day of March, 2016, upon counsel for all parties of record.

By: *s/ Jonathan H. Claydon*
Jonathan H. Claydon